IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SERGEY ZHELYATDINOV,  Petitioner | : |
| v. | : No. 02-CV-04318-MMB |
| JOHN ASHCROFT, UNITED STATES ATTORNEY GENERAL,  Respondent | : |

GOVERNMENT'S RESPONSE TO PETITION
FOR WRIT OF HABEAS CORPUS

I. BACKGROUND

This is an alien habeas corpus case. Petitioner Sergey Zhelyatdinov ("Zhelyatdinov") is a 22-year old native of Kazakhstan, in the former Soviet Union. He entered the United States at New York as a refugee on September 9, 1993 at the age of 13. His status was adjusted to lawful permanent resident on August 16, 1995; 8 U.S.C. § 1255.

On Zhelyatdinov was convicted of "conspiracy-theft by unlawful taking" in the Court of Common Pleas for Erie County, Pennsylvania on August 3, 2000. Zhelyatdinov was sentenced to an indeterminate term of 12 months to 48 months

imprisonment.[1]

On April 2, 2001, the Immigration & Naturalization Service (INS) commenced removal proceedings against Zhelyatdinov, by issuing a "Notice to Appear" or "NTA." The NTA charged that the petitioner was subject to deportation because his conviction was for an "aggravated felony" as defined by the Immigration & Nationality Act (INA) at 8 U.S.C. § 1101(a)(43)(G)(certain theft offenses are "aggravated felonies"), and (a)(43)(U) (conspiracies and attempts to commit aggravated felonies are aggravated felonies). See 8 U.S.C. § 1227(a)(2)(A)(iii) (alien convicted of "aggravated felony" is deportable); 8 U.S.C. § 1228(c)(aggravated felons are "conclusively presumed" to

---

[1] The precise offense of conviction was for conspiracy to commit theft, in violation of 18 Pa.Cons.Stat.Ann. § 903 as it relates to § 3921. Three other counts were dismissed *a nolle prosequi*. The facts were that on June 17, 1999 Zhelyatdinov and other Russians attempted to steal a new Hertz rental car from a motel parking lot. The fairly stiff sentence, and the fact that Zhelyatdinov was designated to serve it at the State Correctional Institution at Western rather than a county jail, suggest that the Commonwealth (and the judge) believed this attempted theft to be more than a one-time incident. The government's supposition makes no difference to his habeas case.

be deportable).

In a hearing before Immigration Judge Walter Durling on November 7, 2001, the alien applied for Withholding Of Removal, and "deferral" of removal under the terms of the United Nations Convention Against Torture. Judge Durling denied the applications, and ordered Zhelyatdinov removed.

Through his present counsel, Zhelyatdinov appealed his removal order to the Board Of Immigration Appeals (BIA). The BIA sustained Judge Durling, and dismissed the appeal in a written order dated February 13, 2002. This constituted a final order of removal.

On February 26, 2002 Zhelyatdinov filed a petition for review with the Third Circuit Court of Appeals. In May the Circuit dismissed the appeal for lack of jurisdiction, because removal orders against criminal aliens are not directly reviewable; 8 U.S.C. § 1252(a)(2)(C).

Zhelyatdinov filed the instant habeas petition on June 28, 2002. In it he argues that (a) his offense of conviction was not an "aggravated felony" and thus he is not deportable; (b) if he is deportable, the Immigration Judge

should have granted him the waiver of deportability known as "withholding of removal;" and (c) the Immigration Judge should have granted relief from deportation under the Convention Against Torture (CAT).

This Court has jurisdiction to review "final orders of removal" against criminal aliens under the habeas statute; 28 U.S.C. § 2241(c)(3); <u>Calcano-Martinez v. INS</u>, 533 U.S. 348, 121 S.Ct. 2268, 2270, 150 L.Ed.2d 392 (2001). The standard of review is legality. Because the petition establishes no illegality in the alien's removal order, it must be dismissed.

II.  <u>ARGUMENT</u>

    A.  Petitioner's Offense Of Conviction Is An Aggravated Felony And He Is Subject To <u>Removal Therefor</u>

The petition makes a conclusory assertion that Zhelyatdinov somehow has not been convicted of an aggravated felony, despite a theft conviction resulting in an indeterminate sentence of 12 to 48 months. Section 1101(a)(43)(G) of Title 8 includes as an aggravated felony a conviction for a "theft offense" for which the sentence imposed is a year or more. In the context of removal

proceedings, a sentence of 12 to 48 months is a sentence of 48 months. See United States v. Galicia-Delgado, 130 F.3d 518, 519 (2d Cir. 1997) (holding that indeterminate sentence is for "maximum imposed" and setting out history of term). Because Zhelyatdinov's sentence was greater than 12 months, his offense of conviction is an aggravated felony and he was properly ordered removed; See 8 U.S.C. § 1227(a)(2)(A)(iii) (alien convicted of aggravated felon is deportable).

      B.    The Attorney General's Determination That Zhelyatdinov Is Not Likely To Suffer Persecution Upon His Return To Kazakhstan is Factual And Not <u>Subject To Review On Habeas</u>

An aggravated felon like Zhelyatdinov is "conclusively presumed" to be deportable; 8 U.S.C. § 1228(c). In the 1996 amendments to the Immigration & Nationality Act (INA), Congress took particular care to eliminate most forms of "relief" from removal for aggravated felon aliens, including former lawful permanent residents like Zhelyatdinov.[2]  Cf. 8 U.S.C. § 1229b(a) (no

---

    [2]    Zhelyatdinov asserts that he "is not subject to removal...because he is a refugee and a Legal Permanent resident of the United States." Petition, page 1, second para. Evidently Zhelyatdinov does not grasp that

"cancellation" of removal for former permanent resident aliens convicted of aggravated felonies); 8 U.S.C § 1182(h) (no "hardship waiver" for permanent resident convicted of aggravated felony); 8 U.S.C. § 1158(b)(2)(A)(ii) (no "asylum" for aliens convicted of aggravated felony); 8 U.S.C. § 1229c(a)(1) (no "voluntary departure" for aggravated felon aliens).

Nonetheless, in restricting deportation waivers and other relief, Congress left open the prospect of a waiver for criminal aliens claiming refugee status. Generally, alien refugees may obtain two forms of relief under the INA: "asylum" under 8 U.S.C. § 1158(a) and "withholding" of removal under 8 U.S.C. § 1231(b)(3). To qualify for asylum, an alien need establish only a "well-founded fear" of persecution, but as noted above the relief is not available to aggravated felons like Zhelyatdinov; 8 U.S.C. § 1158(b)(2)(a).[3]

---

the final order of removal in his case extinguished his permanent resident status. <u>Katsis v. INS</u>, 997 F.2d 1067, 174 (3d Cir. 1993); <u>Matter of Lok</u>, 18 I. & N. Dec. 101, 107 (BIA 1981).

[3]  A grant of asylum results in the alien being accorded permanent residence. "Withholding"

The other relief for refugees is available to some criminal aliens, including Zhelyatdinov. "Withholding" of removal is authorized at 8 U.S.C. § 1231(b)(3)(A) for deportable aliens whose "life or freedom would be threatened" in the country of removal based on race, religion, nationality or political opinion. It differs from asylum in that the standard is essentially objective; the alien's fears, however sincere, are not dispositive. It differs from asylum in another aspect as well; a grant of asylum (and with it permanent residence) is discretionary to the Attorney General even if the alien establishes a "well-founded fear." On the other hand, the Attorney General must "withhold" removal if an applicant establishes that there is a clear probability that his life or freedom would be threatened in his country on account of one of the protected grounds at 8 U.S.C. § 1101(a)(42)(A). See Li Wu Lin v. INS, 238 F.3d 239, 244 (3d Cir. 2001) ("To qualify for mandatory relief under withholding of deportation, ... [the applicant]

---

(and Torture Convention relief) result in a prohibition from expelling an alien to a particular country; in theory, the alien granted withholding is still liable to expulsion to another country.

must show that **it is more likely than not that he will face persecution** if he is deported")(emphasis added); <u>and see</u> <u>INS v. Aguirre-Aguirre</u>, 526 U.S. 415, 119 S.Ct. 1439, 1443, 143 L.Ed.2d 590 (1999).

The petition says that the alien's testimony in his removal hearing established that Zhelyatdinov was more likely than not to be persecuted if returned to Kazakhstan, and that the Immigration Judge got it wrong when the judge concluded otherwise. "The Immigration judge was mistaken in finding that country conditions in Kazakhstan has changed...."(*sic*); Petition, page 7, § 3.

The Attorney General's factual determinations relating to a withholding claim are not reviewable on a petition for habeas corpus. In this case the petitioner concedes that there was conflicting evidence, the State Department country reports relating to Kazakhstan on the government's side, and Zhelyatdinov's essentially uncorroborated testimony on the other; Petition, p. 8, third full para. Stated another way, the Attorney General's decision to deny the withholding was based on weighing and assessment of evidence presented, and that process is

immmune from a collateral attack by a habeas petition. Liang v. INS, 206 F.3d 308, 310 (3d Cir. 2000) (in imigration context, district courts retain habeas jurisdiction over Constitutional and statutory challenges only), cert. denied, 533 U.S. 949, 121 S.Ct. 2590, 150 L.Ed.2d 749 (2001).

The habeas statute grants jurisdiction to district judges to issue writs in their respective districts for those in custody in violation of the Constitution or the laws of the United States.  28 U.S.C. § 2241(c)(3). An alien subject to a final order of removal is in "custody" for purposes of habeas analysis.

In 1996 Congress amended the INA to impose substantial restraints on review of immigration cases by federal courts; Reno v. American-Arab Anti-Discrimination Committee, 525 U.S.471, 485, 119 S.Ct. 936, 944, 142 L.Ed.2d 940 (1999) (limiting judicial review of deportation cases "can fairly be said to be the theme of [IIRIRA]"); Henderson v. INS, 157 F.3d 106, 119, 120 n. 10 (2d Cir. 1998), (1996 amendments were meant to make immigration decisions "nonreviewable to the fullest extent possible under the

Constitution"), cert. denied, 526 U.S. 1004, 119 S.Ct. 1140, 143 L.Ed.2d 208 (1999).[4] The 1996 acts contained express and unequivocal restraints on judicial review in the cases of criminal aliens. See 8 U.S.C. § 1252(a)(2)(C); § 1252(g). Anon some federal courts purported to find an exception to this unequivocal language, by positing that the jurisdiction-stripping amendments in the amended INA did not effect the statutory habeas provision at 28 U.S.C. § 2241(c)(3).

Last June the Supreme Court resolved the question in INS v. St. Cyr, 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001). The St. Cyr Court established that an alien might petition the court for a habeas writ to test a deportation order, but only for legality.

In assessing the scope of review of habeas in a criminal alien case, the St. Cyr Court observed that the

---

[4] See DeSousa v. Reno, 190 F.3d 175, 185 (3d Cir. 1999)(one of Congress' goals in passing AEDPA was to enhance ability to deport criminal aliens by eliminating waiver); Moore v. Ashcroft, 251 F.3d 919, 925 (11th Cir. 2001)(one of Congress' goals in IIRIRA was to expedite the removal of criminal aliens); Lukowski v. INS, 279 F.3d 644, 647 (8th Cir. 2002)(same).

"scope of review on habeas is considerably more limited than on APA-style review;" 533 U.S. at 312, 121 S.Ct. at 2278. The "scope of review" in the Administrative Procedures Act is "abuse of discretion;" 5 U.S.C. § 706. The Court noted that the issue before it was a legal one, and not a question of whether the alien warranted discretionary relief.

Despite the gloss counsel attempts to put on it, Zhelyatdinov's case does not implicate either a legal or Constitutional question. Mere gratuitous incantations that the Immigration Judge was "mistaken as a matter of law" (page 8) do not establish illegality; Zhelyatdinov's argument is nothing more than an assertion that his testimony about country conditions in Kazakhstan (after a nine-year absence) is entitled to more weight than the Department of State's most recent report on the subject. Even if he were correct, the contention is not reviewable on habeas. Bowrin v. U.S. I.N.S., 194 F.3d 483, 490 (4th Cir. 1999) ("Only questions of pure law will be considered on § 2241 habeas review. Review of factual or discretionary issues is prohibited"); Sol v. INS, 274 F.3d 648, 651 (2d Cir. 2001)(federal jurisdiction over § 2241 petitions does

not extend to review of factual or discretionary determinations); <u>Carranza v. INS</u>, 277 F.3d 65 (1st Cir. 2002)("Federal courts therefore retain subject matter jurisdiction over habeas petitions brought by aliens facing removal to the extent that those petitions are based on colorable claims of legal error, that is, colorable claims that an alien's statutory or constitutional rights have been violated"); <u>Finlay v. INS</u>, 210 F.3d 556, 557 (5th Cir. 2000)(same); <u>Lee v. Rogers</u>, 243 F.3d 548 (9th Cir. 2000)(only questions of "pure law" reviewable on habeas, not factual determinations by the BIA).

      C.    <u>The Attorney General's Conclusion That Petitioner Is Not Likely To Be Tortured By His Government Is A Factual Determination Not Reviewable On Habeas</u>

Zhelyatdinov also complains that his application for relief under the Torture Convention was improperly denied. Zhelyatdinov's claim is premised on his conclusion that he might be subject to military service, and "hazing" in the army, if returned to his homeland. For the reasons set out under the Withholding analysis above, that claim must be dismissed as well.

Prior to the 1996 amendments to the INA, The United States had ratified a treaty called the Convention Against Torture ("Convention" or "CAT").[5] Article 3 of the Convention said that "No State Party shall expel, return ('*refouler*'), or extradite a person to another State where there are substantial grounds for believing that he would be in danger of being subjected to torture." Congress had ratified the Convention with the express stipulation that it would not be "self-executing;" at the time of the ratification in 1994, Congress was holding hearings on immigration reform which culminated in the 1996 acts, and possibly it had already decided to close down the asylum/withholding loopholes for criminals.[6]

The Torture Convention provisions are not part of the INA. To integrate the CAT into American law, in 1998

---

[5] Convention against torture and other cruel, inhuman or degrading treatment or punishment, 23 I.L.M. 1027 (1984), as modified 24 I.L.M. 535 (1985); adopted by the U.N. General Assembly Dec. 10, 1984, entered into force June 26, 1987, ratified by United States Oct. 21, 1994, 34 I.L.M. 590, 591 (1995), and entered into force for the U.S. Nov. 20, 1994.

[6] See Akhtar v. Reno, 123 F.Supp.2d 191, 196 (S.D.N.Y. 2000)(CAT not self-executing).

Congress enacted the Foreign Affairs Reform and Restructuring Act of 1998 ("FARRA"), Pub.L. No. 105-277, Div. G, 112 Stat. 2681, 2681-821 (Oct. 21, 1998). FARRA § 2242(a) adopted the Convention's Article 3 essentially *verbatim*.[7] Section 2242(d) made it clear that denials of Torture Convention relief to aliens can be reviewed only in conjunction with a final order of removal, and further makes it clear that neither FARRA nor the Convention itself provides jurisdiction to review the denial if the review is otherwise forbidden by the INA. See 8 CFR § 208.18(e). The provisions for Torture Convention relief are in the Attorney General's regulations appertaining to the immigration laws, specifically the part relating to asylum and withholding of removal. See 8 CFR, Part 208.

    To obtain relief under the Torture Convention, the alien must establish a clear probability (or "more likely than not") that he would be subject to torture by his government or its officials upon repatriation. Emruloski v. Ashcroft, No. 01-4083, 2002 WL 1768996, *4 (3d Cir. Aug. 1,

---

[7] FARRA § 2242(a) says that "it is the policy of the United States not to expel...any person to a country in which there are substantial grounds for believing that the person would be in danger of being subjected to torture."

2002)(unpublished). And see Julmiste v. INS, - F.Supp.2d -, 2002 WL 1733273, *4 (D.N.J. Jul. 23, 2002) ("Under CAT, the IJ must first determine if the petitioner has shown that it is more likely than not that he will be tortured upon return to the country of removal. If the petitioner has satisfied his burden of proof, then the IJ may grant either a Withholding of Removal or a Deferral of Removal"). Because the objective standard is the same and the relief granted similar, a Torture Convention claim is analytically similar to a withholding claim, the difference being an objective probability of "persecution" as opposed to an objective probability of "torture." Cf. Johnson v. Ashcroft, 286 F.3d 696 (3rd Cir. 2002)("The INS itself has recognized the similarity of these types of claims in general: in the interim rule establishing procedures for CAT claims, it noted that the same application form is used for asylum, withholding of removal, and relief under CAT because in many cases 'the underlying facts supporting these claims will be the same.' Regulations Concerning the Convention Against Torture, 64 Fed. Reg. 8478, 8485 (Feb. 19, 1999)") with Sulaiman v. Ashcroft, - F.Supp.2d -, 2002 WL 1752207, *5

(E.D.Pa. Jul. 30, 2002)(DuBois, S.J.)(holding that "claims for relief under CAT are analytically separate ...and not merely a subset of claims" for withholding, criticizing the government's argument to the contrary as "flawed").

Whatever the burden the criminal alien faces in persuading the Attorney General that he will be tortured on his return, the standard of review is the same on habeas. In this case, Zhelyatdinov says that the government of Kazakhstan will torture him by inducting him into the army and "hazing" him. Petition, page 14. It is very unlikely that any hazing incident to induction into military service, even in a former U.S.S.R. republic, is sufficiently pernicious to meet the Torture Convention definition of "torture." Moreover, many aliens (and some immigration lawyers) do not understand that, in the United States, compulsory military service is not synonymous with persecution. Cf. Nenadovic v. INS, 108 F.3d 124 (7th Cir. 1997); Gonzalez v. INS, 82 F.3d 903, 908 (9th Cir. 1996); Umanzor-Alvarado v. INS, 896 F.2d 14 (1st Cir. 1990). Zhelyatdinov attempted to bolster his CAT claim by some testimony about hazing, but his evidence was considered and

rejected by the Immigration Judge as a matter of fact. The Immigration judge's determination leaves no room for review on a habeas petition, and the petition must be dismissed. See Sulaiman v. Ashcroft, *supra* (district court lacks jurisdiction to review factual determination that Torture Convention relief is not warranted).

III. CONCLUSION

    For the foregoing reasons the petition must be dismissed.

                          Respectfully,

                          PATRICK L. MEEHAN
                          United States Attorney

                          _____
                          JAMES G. SHEEHAN
                          Assistant United States Attorney
                          Chief, Civil Division

                          _____
                          STEPHEN J. BRITT
                          Assistant United States Attorney

*Certificate of Service*

I certify hereby that on the 22nd Day of August, 2002, I personally served or caused to be served a copy of the attached Government's Response To Habeas Petition, addressed to:

>Tatiana Aristova, Esq.
>Law Offices of John J. Gallagher
>1760 Market Street, Suite 1100
>Philadelphia, PA   19103-4104
>
>*Attorney for petitioner,*

by first class mail service upon counsel.

_____
STEPHEN J. BRITT
Assistant United States Attorney
Suite 1250, 615 Chestnut Street
Philadelphia, PA 19106-4476
(215) 861-8443
(215) 861-8642  telecopier