IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA
PHILADELPHIA, PA

United Statex ex rel. ZHELYATDINOV, Sergey,    :
                                               :    CASE NO. 02-CV-4318
A# 71 230 704                                  :
                                               :
V.                                             :
                                               :
UNITED STATES ATTORNEY                         :
GENERAL JOHN ASHCROFT                          :

**LEGAL BRIEF IN SUPPORT OF**

**PETITION FOR WRIT OF HABEAS CORPUS**

**I.     STATEMENT OF THE ARGUMENT**

Relator's deportation in this matter would amount to a due process violation, because Immigration Judge unreasonably, arbitrarily and capriciously denied application for Withholding of Removal, and relief under the Convention Against Torture. Because the Immigration Judge misinterpreted and misapplied the relevant law, ignored substantial evidence supporting Relator's claims, and because his decision was affirmed by the Board of Immigration Appeals [hereinafter "BIA" or "the Board"] without due consideration, Relator respectfully request this Court to issue the Writ of Habeas Corpus prohibiting Respondents from deportation of Relator.

Immigration Judge erred in denying Relator's application for Withholding of Removal, and relief under the Convention Against Torture, because Immigration Judge accepted all of the facts which Relator testified to as true, and found that Relator suffered from persecution in the past. Immigration Judge unreasonably, arbitrarily and capriciously found that the country conditions had changed and that Relator would not suffer from persecution in the future.

Immigration Judge denied Relator's application for Withholding of removal because he found that Baptists no longer face persecution in Kazakhstan. In so doing, the Judge ignored substantial testimonial and documentary evidence, which clearly indicated that Baptists continue to suffer from harassment, discrimination and persecution in Kazakhstan and that this persecution is recognized by the United States to the extent that United States administers a special refugee program for this group under the Lautenberg amendment.[1] Once an applicant has demonstrated that he has suffered past persecution on account of a statutorily-protected ground, and the record reflects that country conditions have changed to such an extent that the applicant no longer has a well-founded fear of persecution from his original persecutors, the applicant bears the burden of demonstrating that he has a well-founded fear of persecution from any new source. In re N-M-A-, I. & N. Interim Dec. No. 3368, (1998, B.I.A.). *However, the record in this case did not reflect that country conditions have changed to such an extent that the applicant no longer has a well-founded fear of persecution from his original persecutors.*

The Judge went on to deny Relator's relief from removal under the United Nations Convention Against Torture. In so holding, the Judge misinterpreted the Convention's plain language, and ignored compelling documentary evidence which clearly established that the anti-Baptist policies in Kazakhstan continue to be implemented with the overt or implicit assistance, collusion, and acquiescence of the Kazakhstan government.

Immigration Judge's findings were not supported by record in this case. Neither Immigration Judge nor BIA referred to any specific credible evidence confirming this finding and ignored ample evidence to the contrary. Therefore, agency determination in this case was arbitrary and capricious to the extent that amounts to violation of the due process of law. Therefore, Writ of Habeas Corpus should be issued in this case, as the deprivation of liberty, in this case,

---

[1] Act of November 21, 1989, P.L. 101-167, §599E, 103 Stat. 1263, as amended by Act of November 5, 1990, P.L. 101-513, §598, 104 Stat. 2063, and Act of December 12, 1991 (Miscellaneous and Technical Immigration and Naturalization Amendments of 1991), P.L. 102-232, Title III, §307(l)(9), 105 Stat. 1757.

deportation, would be in violation of the laws and the Constitution of the United States.

## II.    SUMMARY OF THE CASE

Relator in this matter is a Baptist who was born and raised in Kazakhstan. Immigration Judge found his testimony credible and acknowledged that Relator was a Baptist and faced persecution in the past for his religious beliefs. The judge also acknowledged that Relator credibly testified as to the hazing he is likely to face if he is drafted to serve in the Kazakhstan army.  Relator and his family members testified to the terrible sufferings they went through because of their religious beliefs. Immigration Judge correctly acknowledged that Relator experienced persecution during the times of the former Soviet Union, however the Immigration Judge was incorrect in his finding that the source of persecution has been removed.  In this case the facts of persecution Relator testified to demonstrate that anti-Baptist attitudes in Kazakhstan are still persistent and interwoven into the fabric of their society that it could not simply fade with the dissolution of the Soviet Union.

Relator testified to the facts of persecution, which occurred after the Soviet Union collapsed.  In fact, Relator testified that these incidents have worsened since the demise of the Soviet Union.  Relator's credible testimony confirms that he faces a reasonable possibility of future persecution under the conditions that exist in Kazakhstan at the present time.  Relator's testimony clearly demonstrates that he faces a reasonable possibility of future persecution in the post Communist era in Kazakhstan.  Relator's subjective fear of future persecution in Kazakhstan on accounts of his religion is confirmed by the country condition reports and other objective evidence therefore this subjective fear is reasonable.  In fact, there was no objective evidence presented in the case to rebut the presumption of future persecution, which arose in this case under matter of N-M-A, Interim Decision 3368 (BIA1998).

The United States Department of State Report confirms that anti-Baptist attitudes are still strong in the Kazakhstan society.  Since Relator has demonstrated the reasonable possibility of future persecution his request for political asylum should

have been granted.  Therefore the judge was mistaken in denying Relator request for withholding of removal and/or relief under Article 3 of the Convention against torture.  BIA was mistaken in affirming Immigration Judge's decision without due consideration and analysis.

**III.    STATEMENT OF FACTS**

Relator is the a 22-year old, single male, citizen of Kazakhstan of Kazakhstann ethnic origin and belongs to the Baptist religion.  He is s well recognized member of the Baptist community in Erie, PA. Relator was admitted to the United States in New York on or about September 21st, 1993 as a refugee. His status adjusted to a lawful permanent resident in August 16, 1995.

On April 12th of 2001 Relator was served a Notice to Appear form 1-862 setting forth therein at allegation 5 and 6 as a conviction, state of Pennsylvania for theft by unlawful taking violation of 18 Pennsylvania status 903  and Section 3921, sentenced to a term of imprisonment of not less than 12 months, no more than 48 months. Immigration Court found that Relator is convicted of an aggravated  felony under Section 101(a)(43)(G) of the Act.

As Relator expressed fear of removal to his native country, he applied for withholding of removal under  Section 241(b)(3) and for consideration of Article 3 protection under the United Nations Convention Against Torture. In this regard, the Service Counsel has conceded Relator's conviction does not entail a "particularly serious crime" for withholding of removal purposes. Consequently, the  Immigration Court considered this case under Section 241(b)(3) in the first instance.

Relator testified as to his and his family's background living in the former Soviet Union, present day Kazakhstan. He testified they came to the United States in late 1993 as refugees. He was at the age of 13 at the time. He arrived with his parents and sibling. According to Relator, he has no relatives remaining in his native country. They left Kazakhstan because of suffering ill treatment at the hands of the former Soviet government and neighbors because of their Baptist religion. Relator testified he

was a practicing Baptist and has been since childhood. He used to attend secret services with his mother while the communist controlled the government there.

Relator related severe problems at school and other numerous instances of harassment, violence, because of his Christian faith as a Baptist fully set forth in Relator's testimony as well as his written affidavit attached to his form I-589. Also admitted into the record was Relator's mother's affidavit, which has been accepted at face value and which had been considered by the Court. Relator and his mother testified that they suffered past persecution in their native country, and as such, Immigration Court found that there is a presumption of persecution should Relator return to his country.

Relator testified that he'd be singled out as a Baptist believer and subjected to severe mistreatment if he is drafted in the Kazakhstan army, which is required as a universal draft according to Relator. Relator is opposed to bearing arms that is party of his reigious beliefs as a Baptist. Immigration Court found that this testimony will form a foundation of his persecution to the determination credibility should be made. IJ stated that he closely observed Relator under oath, listened to his testimony both on the record and cross-examination and found that at "no time did Relator attempt to mislead the Court or otherwise inflate his claim. His testimony, as well as the written statement of his mother has been accepted by the Court as credible and sincere. Moreover, in all. important aspects his testimony appeared to be internally consistent and believable. Stated differently, the Court has no problem with Relator's credibility."

Based on this finding, IJ should have granted application for Withholding of Removal, and relief under the Convention Against Torture.

## IV. ANALYSIS

### 1. Standard of review

In a similar case, Kovalev v. Ashcroft, 2002 WL 31135388 (E.D.Pa. 2002) this Court found that the scope of review in similar cases is limited to determining whether there were violations of the Constitution or laws or treaties of the United

States, and that a district court does not have jurisdiction to review the facts or determinations or discretionary actions of the Attorney General. Even under this stringent standard of review, this Court should find that the order of removal in this case was in violation of the Constitution or laws or treaties of the United States, because withholding of deportation, sought in this case, is mandatory and does not constitute discretionary relief.

Withholding of deportation is mandatory if an alien establishes that it is more likely than not that he would be subject to persecution on one of the specified statutory grounds. Immigration and Nationality Act, § 243(h)(1), as amended, 8 U.S.C.A. § 1253(h)(1). However, even in discretionary cases, "administrative tribunals are not unfettered in their rulings; instead they are constrained to decide cases in a non-arbitrary manner, and thus, when a court is persuaded in a given case that an administrator has acted arbitrarily or capriciously, the ordinary entitlement to judicial deference disappears." Zhao v. U.S. Dept. of Justice, 265 F.3d 83 (2nd Cir. 2001).

As will be more fully illustrated below, Relator established that it is more likely than not that he would be subject to persecution on one of the specified statutory grounds. As denial of relief in this case was arbitrary and capricious, this Court should find that it was in violation of the due process of law and therefore, in violation of the Constitution.

## 2. This Court should defer to the Immigration Judge's favorable credibility determination.

Neither the Immigration Service nor the Immigration Judge questioned Relator's credibility, and both accepted the facts he stated as true. Immigration Judge effectively made a positive credibility determination when stating that he acknowledged Relator established past persecution. Because the Judge was in the optimal position to make such a determination, and because that determination is fully supported by the evidence of record, this Court should follow the Judge's lead and to accept Relator's testimony as true.

Credibility findings are generally treated with great deference by reviewing courts when those findings are fairly supported by the record, see Martinez-Sanchez v. I.N.S., 794 F.2d 1396, 1400 (9th Cir. 1986); see also Saballo Cortez v. I.N.S., 761 F.2d 1259, 1262 (9th Cir. 1985), are explicit, see Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981), contain specific reasons, see Matter of Doural, 18 I & N Dec. 37, 39 (BIA 1981), and take into account all relevant factors see e.g., Stewart v. Secretary of H.E.W., 714 F.2d 287, 290 (3d Cir. 1983); see also Arthur C. Helton, Credibility Determinations in Asylum Cases, 4 Fed. Immig. L. Rep. 13 (1986).

The theory behind this premise is that, as the fact finder who sees the applicant firsthand and who is able to ask questions and evaluate his demeanor, the immigration judge is in the best position to make credibility findings regarding an application for asylum. See Hartooni v. I.N.S., 21 F.3d 336, 342 (9th Cir. 1994).

In this case, implicit in Immigration Judge's decision is a finding that Relator was a credible witness, and that the facts he presented were true. The Immigration Service did not contest the veracity of any of Relator's testimony. Because the Immigration Judge is in the best position to make such a determination, the Court should adopt that finding, and accept the facts which Relator's presented at trial as true.

**2. Immigration Judge misinterpreted the relevant country conditions, and erred when he held that Relator is not prima facie eligible for Withholding of Removal and relief from removal under the Convention Against Torture based on his membership in Baptist church.**

Immigration Judge found that Relator had established past persecution. Relator submitted extensive documentation regarding the relevant country conditions, proving continuing persecution and discrimination of Baptists in Kazakhstan. The totality of evidence submitted in this matter, established the clear probability of persecution required for purposes of his Withholding of Removal Application. The Immigration Judge was mistaken in finding that the country conditions in Kazakhstan has changed and denied his application for asylum and withholding of removal because he found that Baptists no longer face persecution because of persecution and discrimination of Baptists in Kazakhstan. The Immigration Judge ignored substantial testimonial and

documentary evidence which clearly indicated that Baptists continue to suffer from harassment, discrimination and persecution in Kazakhstan.

In this case, the evidence submitted as to past persecution has not been rebutted by preponderance of the evidence establishing fundamental change in circumstances or of applicant's ability to avoid a future threat by relocating. As noted above, Relator's family departed Kazakhstan in 1993 which is approximately two years of its independence. Immigration judge correctly acknowledged that the government and the culture of the country at that time treated Christian believers as they were treated under the former USSR. Immigration judge correctly found evidence of past persecution of Relator's family under the former USSR and during the years that they lived in Kazakhstan under that particular government at that time until their departure. Relator testified that was the basis for their immigration, and the Court again has found him credible.

However, IJ was mistaken as a matter of law and as a matter of fact in his finding that the regulatory presumption at 8 C.F.R. 208.16b2 relating to future persecution would not exist under present day government of Kazakhstan. IJ stated that he had reviewed the country reports and the reports on religious freedom compiled by the Department of State. However, IJ disregarded the fact that the Third Circuit is skeptical of the State Department's Country reports and presumably the State Department's report on religious freedoms as it noted in its decision of Lin v. INS, F. 3d Circuit, number 00-1849, (3rd Cir. January 24, 2001).

IJ was mistaken in his finding tat "there seems to be no other documentary evidence in this case that would overtly refute the State Department's report in this particular matter." The Court acknowledged that "there are localized problems with certain officials creating problems for certain religious group, including … Baptists" However, IJ was mistaken in his conclusion that "overall, there's a lack of evidence to show that the government of Kazakhstan singles out Baptist religion for disparate treatment." Mere fact that the government of Kazakhstan may also mistreat other Cxhristians, along with Baptists, should not serve to deny relief to Relator. In fact, IJ complexly ignored the fact that the Human Rights Watch report, along with the other evidence in the case clearly demonstrated that "temporary problems relating to

registration" of Baptist churches led to permanent closure of Baptist churches. Combined with widespread societal hostility towards Baptists, this government's treatment in a clear indicated of continued animosity towards Baptists in Kazakhstan. The Kazakhstan government used the pretext of "temporary problems relating to registration" of Baptist churches to close them down permanently, and IJ's opinion in this case clearly shown that the Kazakhstan government was probably successful its it's attempts to cover up its unlawful suppression of protestant religions.

The objective evidence submitted by Relator in this case is clearly sufficient to corroborate his fears of not being able to return to Kazakhstan and openly practice his faith unencumbered by the state. Accordingly, as IJ found Relator's testimony credible, as IJ found he has a genuine fear of returning to Kazakhstan, IJ was mistaken in his conclusion that the evidence in this particular record does not corroborate his fear of not being able to return to Kazakhstan and openly practice his religious belief as a Baptist. The record contained no evidence to overcome the presumption of past persecution to Relator's family. Neither State Department's reports, nor Human Rights Watch reports ever mentioned that the situation in Kazakhstan had improved since 1992. In fact, the reports speak to the contrary, clearly indicating that the situation had deteriorated.

Based on the above, the evidence submitted in this matter proves that it is more likely than not that, because of impending army service, combined with strong adverse societal attitudes towards Baptists, Relator his or her life or freedom would be threatened in the future in Kazakhstan. It is more likely than not that he would be persecuted on account of his religion, and also because of his past escape from Kazakhstan as a religious refugee, upon removal to that country.

In evaluating whether it is more likely than not that the applicant's life or freedom would be threatened immigration judge shall not require the applicant to provide evidence that he or she would be singled out individually for such persecution if:

(i) The applicant establishes that in that country there is a pattern or practice of persecution of a group of persons similarly situated to the applicant on account of

race, religion, nationality, membership in a particular social group, or political opinion; and

(ii) The applicant establishes his or her own inclusion in and identification with such group of persons such that it is more likely than not that his or her life or freedom would be threatened upon return to that country.

Relator has satisfied the above criteria. He has provided strong objective evidence confirming that there is a pattern or practice of persecution of Baptists. He has established his inclusion in and identification with such group of persons. He has established deaths of similarly situated persons. Based on the above, Relator has satisfied the criteria stated in 8 CFR §208.16.

Under 8 CFR §208.16, to establish that the applicant's life or freedom would be threatened in the proposed country of removal on account of race, religion, nationality, membership in a particular social group, or political opinion, the testimony of the applicant, if credible, may be sufficient to sustain the burden of proof without corroboration. In this case, not only did the applicant supply credible testimony, but he also supplied extensive corroborating evidence in support of his claim, including evidence of deaths of his relatives in similar circumstances.

Consequently, based on the above evidence, including his own credible testimony that he and his family members were physically harmed for being Baptists, and that the Baptist church in his town was burned to the ground, and Baptists were unable to build a new church, and were forced to eventually flee Kazakhstan for other countries, Relator clearly established a "clear probability" of being persecuted by his government or by groups his government cannot or will not control. Therefore, the Court should have granted Relator's application for withhold of removal under Section 241(b)(3) as related directly to his Baptist religious beliefs.

Instead, Immigration Court found that Relator is not likely to be persecuted in the future because of changed country conditions. Immigration Judge made this finding in full disregard of ample evidence to the contrary. It has been held that abuse of discretion may be found where the agency acted in an arbitrary or capricious

manner, i.e. the agency decision provides no rational explanation, inexplicably departs from established policies, is devoid of any reasoning, or contains only summary or conclusory statements. <u>Douglas v. INS</u>, 28 F.3d 241, 243 (2d Cir.1994), See <u>Anderson v. McElroy</u>, 953 F.2d 803, 806 (2d Cir.1992). This is precisely the case here. Immigration Judge found past persecution in this case, alleged no specific evidence sufficiently establishing the future persecution is not likely to occur and ignored ample evidence confirming the persecution of Baptists is continuing and therefore future persecution is imminent in this case. This is precisely what constitutes arbitrary and capricious determination, and therefore, the denial of relief in this case should be found in violation of the due process of law. For these reason, Wtir of Habeas Corpus should issue.

**4. <u>The Immigration Judge misinterpreted the relevant country conditions, and erred when he held that Relator is not prima facie eligible for Withholding of Removal and relief from removal under the Convention Against Torture based on his impending army service.</u>**

In addition to requesting withholding of removal and relief under Convention against Torture based on his membership in Baptist church, Mr. Zhelyatdinov also requested the same relief based on impending army service. Under Article 13 of the Law of Kazakh Republic N 1897-XII as of January 19, 1993, "On mandatory army service", "all Kazakh citizens aged 18 to 27 are subject to mandatory army service, unless exempted." See <u>www.zakon.kz</u>. Immigration Judge agreed that Mr. Zhelyatdinov will be subjected to hazing in the army in case if he is forced to return to Kazakhstan, but denied relief stating that Kazakh president is addressing the situation, according to the President's last speech. Absent objective evidence confirming that the President is in fact correcting the situation effectively, Immigration Judge's conclusion is unfounded. Relator submitted extensive documentation regarding hazing in Kazakhstan army. In Mr. Zhelyatdinov's case, his Baptist faith and because of widespread adverse societal attitudes towards Baptists, instigated by Kazakhstan government, he is certain to be singled out for more severe hazing because of his religious beliefs. Therefore, Immigration Judge erred when denying Relator's application for withholding of removal and for relief under the Convention Against Torture based on his impending army service in this matter.

Relator is opposed to military service because of his religious convictions and also he feels that if he is drafted he will be singled out because of his religious faith and harmed. As a general proposition, the Court in Matter of A-G-, 19 I&N Dec. 502 (BIA 1987) held that a sovereign government does not engage in persecution by requiring military service of certain of its citizens, or to enforce a requirement with certain penalties. The Court went on to carve out an exception in accordance with the 1951 Convention and the 1967 protocol relating to the status of refugees, that is an alien, the Court held, may establish persecution in circumstances where a disproportional or severe punishment would resolve on account of one of the five grounds of Section 101(a)(42)(A). The Court held in Matter of Canas, 19 I&N Dec. 697 (BIA 1988) that an alien must present evidence that the government's conscription laws are carried out in a persecutory manner against persons of a particular religious belief, but this holding is only related to an application for asylum or related relief based on religion, and not to the relief under the Convention against Torture.

In viewing Relator's evidence under the template of Matter of Canas and Matter of A-G-, the Court should have found that the evidence in this record is sufficient to establish that the government of Kazakhstan's conscription laws to the category would impute a persecutory intent. Moreover, as the Court held in Matter of S-F-, 21 I&N Dec. 486 (BIA 1986) that "mixed motive" cases, alien is not obliged to show conclusively why persecution may occur. The record in this does point to instances where the government there has apparently progressively pursued imprisonment for those who refuse to perform military service. The documentary evidence of record submitted by Relator does reveal a degree of problems concerning military hazing of conscripts resulting in certain instances injuries, somewhat severe, and death. Therefore, IJ should have granted at least the relief under Convention against Torture based on this evidence.

IJ was mistaken as a matter of fact when he ignored the above objective evidence and relied on speculative reports that "the government of Kazakhstan has recognized the problem and has taken affirmative steps to either end or minimize the practice of military hazing." IJ acknowledged that "they have had mixed results" at the best. The record did not establish that the government of Kazakhstan achieved any

particular results is relieving conscripts from the horrors of army hazing. Mere speculations that government of Kazakhstan "actively seeks" to punish "those responsible," without any evidence to confirm that the circumstances of military conscripts in this country have actually improved, or that hazing had actually subsided, should not serve to deny relief under Convention Against Torture and other forms of cruel, inhuman, degrading treatment or punishment, which has been binding on the United States since November 20, 1994. In accordance with the Convention, protection should be granted even in cases where the government of the country in issue seeks to rectify the situation, if the government can not control or restrain the individuals responsible for torture. This is precisely the case here.

Article III of the Torture Convention prohibits signatory states from expelling, returning or extraditing "a person to another state where there are substantial grounds for believing that he would be in danger of being subjected to torture." In order to bring U.S. asylum law into accord with that country's obligations under international law, on October 21, 1998, Congress passed (and the President signed into law) the Foreign Affairs Reform and Restructuring Act of 1998, P.L. 105-277. Section 2242 of that legislation implements Article III of the Torture Convention.

Thereafter, the Department of Justice promulgated regulations implementing section 2242 of the new legislation. Those regulations confer jurisdiction upon the Immigration Judges and the Court to consider claims under the Torture Convention 8 C.F.R. 208.16-208.18 (2000).

In short, the regulations provide that, when an applicant establishes that it is more likely than not that he would be tortured if removed to the proposed country of removal, the U.S. may not effect that removal 8 C.F.R. 208.16(c)(2). The regulations require that the harm be "inflicted by or at the instigation of, or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. 208.18(a)(1).

Article I of the Torture Convention defines torture as:

> any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining

from him or a third person information or a confession, punishing him for an act he or a third person has committed or is suspected of having committed, or intimidating or coercing him or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.

*See also*, 8 C.F.R. 208.18(a) (adopting the Convention's definition). Section 208.18(a)(6) of the interim regulations requires a torture victim to be "in the custody or physical control of the perpetrator."

The government of the country of alleged torture need not have actual awareness of the individual applicant or of the group's inclination to torture him personally. As this Court noted in In Re S-V, Interim Decision 3430 (BIA 2000),

the United States Senate included an understanding replacing the word "knowledge" in this definition of acquiescence with the word "awareness," indicating that *actual knowledge of activity constituting torture is not required.* This revision is also reflected in the regulations.

Id. at 5 *(internal citations omitted; emphasis added).* In short, the Court found that, although the applicant is required to demonstrate that he personally is in danger of being singled out for torture Id. at 6, he is not required to demonstrate that the government officials who allow the group which he fears to function have specific knowledge of the activity constituting torture Id. at 5. By the same token, neither the CAT nor its implementing regulations may be construed to require that an applicant show the government's actual knowledge of his individual situation and of the specific torture which he fears.

In the S-V case, the Court clarified that the "willful blindness" provision of the Torture Convention is not to be confused with the concept in asylum law of a group which the government is "unwilling or unable to control." That is, the relevant question is not whether the government is unable to control a particular group which

the applicant fears; rather, it is whether government officials deliberately accept the group's activities. Id. at 6. The focus of the analysis is on the feared group, not on the applicant. The Torture Convention does not contemplate that an applicant will establish conclusively that government officials are aware of his individual case, and are actively encouraging his torture; rather, it contemplates that groups which government officials support, either explicitly or tacitly, may be considered state actors within the meaning of the Convention.

In this case, since Immigration Judge agreed that Mr. Zhelyatdinov will be subjected to hazing in the army in case, he should have granted relief under Convention against Torture, based on *Duarte de Guinac v. INS*, 179 F. 3rd 1156, 1162 (9th Cir., 1999). Therefore, Immigration Judge erred when denying Relator's application for relief under the Convention Against Torture based on his impending army service in this matter. As Immigration Judge misinterpreted the Convention's plain language, and ignored compelling documentary evidence which clearly established that conscripts in Kazakhstan continue to suffer from cruel, inhuman, degrading treatment as a result of hazing in the army and/or as a result of imprisonment in case if they refuse to serve in the army for any reason, Writ of Habeas Corpus should issue and relief under Convention Against Torture should be granted.


## V. <u>CONCLUSION</u>

For all of these reasons, Writ of Habeas Corpus should be issued in this case, as the deprivation of liberty, in this case, deportation, would be in violation of the laws and the Constitution of the United States, as based on erroneous denial of applications for withholding of removal and relief under the Convention Against Torture.


Respectfully,


Tatiana S. Aristova, Esq.

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA
PHILADELPHIA, PA

United Statex ex rel. ZHELYATDINOV, Sergey,  :
                                             :     CASE NO. 02-CV-4318
A# 71 230 704                                :
                                             :
V.                                           :
                                             :
UNITED STATES ATTORNEY                       :
GENERAL JOHN ASHCROFT                        :

**CERTIFICATE OF SERVICE**


      This is to certify that I have this day served the following individuals in the foregoing matter with one copies of the foregoing by having mailed a copy of same via postage prepaid US first class mail as follows:

Honorable John Ashcroft
United States Department of Justice; Office of Immigration Litigation
Ben Franklin Station; P.O. Box 878, Civil Division
Washington, DC 20044

Patrick L. Meehan, Esq., James G. Sheenhan, Esq.,
Office of Immigration Litigation; Civil Division – Department of Justice
1331 Pennsylvania Avenue, N.W. Room 7026 South
Washington, DC 20004

Stephen J. Britt, Esq.
615 Chestnut St, Suite 1250
Philadelphia, PA 19106


This day of November 7, 2002.


_____
Tatiana S. Aristova, Esq.
PA State Bar No. 85928

November 7, 2002

**VIA HAND DELIVERY**
Honorable Michael M. Baylson
Judge, United States District Court 4001
United States Courthouse
601 Market Street
Philadelphia, PA 19106-1744

*Re:* **ZHELYATDINOV** v. Ashcroft, et al., **CASE NO. 02-CV-4318**

Dear Judge Baylson:

Enclosed please find my Brief in the above matter. Please do not hesitate to contact me directly if you have any questions or concerns with regard to this case.

Very truly yours,

Tatiana S. Aristova, Esq.

November 7, 2002

Honorable John Ashcroft
United States Department of Justice; Office of Immigration Litigation
Ben Franklin Station; P.O. Box 878, Civil Division
Washington, DC 20044

*Re:* **ZHELYATDINOV** v. Ashcroft, et al, **CASE NO. 02-CV-4318**

Dear Judge Baylson:

Enclosed please find my Brief in the above matter. Please do not hesitate to contact me directly if you have any questions or concerns with regard to this case.

Very truly yours,

Tatiana S. Aristova, Esq.

November 7, 2002

Patrick L. Meehan, Esq., James G. Sheenhan, Esq.,
Office of Immigration Litigation; Civil Division – Department of Justice
1331 Pennsylvania Avenue, N.W. Room 7026 South
Washington, DC 20004

*Re:* **ZHELYATDINOV** v. Ashcroft, et al., **CASE NO. 02-CV-4318**

Dear Judge Baylson:

Enclosed please find my Brief in the above matter. Please do not hesitate to contact me directly if you have any questions or concerns with regard to this case.

Very truly yours,

Tatiana S. Aristova, Esq.

November 7, 2002

Stephen J. Britt, Esq.
615 Chestnut St, Suite 1250
Philadelphia, PA 19106

*Re:* **ZHELYATDINOV** v. Ashcroft, et al., **CASE NO. 02-CV-4318**

Dear Judge Baylson:

Enclosed please find my Brief in the above matter. Please do not hesitate to contact me directly if you have any questions or concerns with regard to this case.

Very truly yours,


Tatiana S. Aristova, Esq.