IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES EX REL.<br>ZHELYATDINOV, SERGEY<br>A 71 230 704, : | |
| : | |
| Relator, : | CIVIL ACTION |
| v. : | |
| : | NO. 02-4318 |
| JOHN ASHCROFT, as Attorney General : | |
| of the United States, : | |
| : | |
| Respondent. : | |

## MEMORANDUM

**Baylson, J.**                                                                                                                    **December 27, 2002**

      Sergey Zhelyatdinov, the Relator in this habeas corpus proceeding, entered the United States in 1993 as a refugee from his native Kazakhstan, formerly part of the Soviet Union. Relator became a lawful permanent resident on August 16, 1995.  Relator is subject to a deportation order as a result of a 2000 conviction for conspiracy to commit the crime of theft by unlawful taking in the Court of Common Pleas for Erie County, Pennsylvania.  Relator seeks relief from deportation under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, 23 I.L.M. 1027 (1984), as modified, 24 I.L.M. 535 (1985) ("Convention Against Torture").  Currently before the Court is Relator's Petition for Writ of Habeas Corpus, which was filed on June 28, 2002.  Subsequently, Relator was released on bail.  Oral argument was held on December 20, 2002.  For the reasons set forth below, the Petition for Writ of Habeas Corpus will be granted.

I.      Factual and Procedural Background

On August 3, 2000, Relator was convicted of conspiracy to commit the crime of theft by unlawful taking in the Court of Common Pleas for Erie County, Pennsylvania, and was sentenced to an indeterminate term of twelve months to forty-eight months. On April 2, 2001, the Immigration and Naturalization Service ("INS") commenced removal proceedings against Relator by issuing a Notice to Appear. The Notice to Appear charged that Relator was subject to deportation because his conviction was for an "aggravated felony" as defined by the Immigration and Nationality Act at 8 U.S.C. § 1101(a)(43)(G).

In a hearing before Immigration Judge Walter Durling on November 7, 2001, Relator applied for withholding of removal and "deferral" of removal[1] under the terms of the Convention Against Torture on the basis of his religious beliefs (Baptist) and impending military service in Kazakhstan. Because the Immigration Judge concluded that Relator had been a victim of past persecution in Kazakhstan based on his religion, there was a presumption that Relator's life or freedom would be threatened in the future on the basis of the original claim. 8 C.F.R. § 208.16(b)(1)(i). Although there was a presumption of persecution and although the Immigration Judge found Relator's testimony to be credible, he denied the applications and ordered Relator removed for the following reasons:

> [E]ven though I find the respondent's testimony as credible, and even though I find that he has a genuine fear of returning to Kazakhstan, I must find that the

---

[1] Deferral of removal is a temporary condition subject to further review by the INS and immediate discretionary termination by the Attorney General. Sulaiman v. Attorney General, 212 F. Supp. 2d 413, 415 n.3 (E.D. Pa. 2002). Furthermore, it only guarantees deferral from deportation to the specific country where the alien is likely to be tortured. Id. (citing 8 C.F.R. § 208.17). Withholding of removal, on the other hand, is an "absolute prohibition against removal." Id. (quoting IMMIGRATION LAW SERVICE 2D, Glossary, Anna Gallagher).

> evidence in this particular record does not corroborate his fear of not being able to return to Kazakhstan and openly practice his relief belief as a Baptist. The evidence of record in my estimation overcomes the presumption of past persecution to the respondent's family. That is, I find that the evidence establishes that a person in the same or similar circumstances would not longer have a fear of being persecuted if returned to Kazakhstan. Consequently, the respondent has failed to establish a "clear probability" of being persecuted by his government or by groups his government cannot or will not control. Therefore, the Court will deny the respondent application for withhold of removal under Section 241(b)(3) and related directly to his Baptist religious beliefs.

Oral Decision of Immigration Judge Durling at 7-8 (November 7, 2001).

The Immigration Judge also considered Relator's reluctance to return to Kazakhstan because of his fear of being drafted by the Kazakhstan government pursuant to its authority of implementing the universal military draft, Relator's contention that he is opposed to military service because of his religious convictions, and Relator's feeling that he will be singled out and harmed because of his religious faith if he is drafted. Id. at 8. The Immigration Judge relied on the BIA's holding in Matter of Canas, 19 I&N Dec. 697 (BIA 1988), that an alien must present evidence that the government's conscription laws are enacted with the intent of persecuting members of a certain religion, or that the conscription law were carried out in a persecutory manner against persons of a particular religious belief. After reviewing the evidence on the record, the Immigration Judge found that Relator's reluctance to return to Kazakhstan because of his fear of being drafted into military service did not rise to the level of persecution and that Relator failed to establish a "clear probability" of persecution on that account. Id. at 10. Consequently, Immigration Judge denied Relator's applications for relief under the Convention Against Torture in this regard.

The Immigration Judge's decision was affirmed on appeal by the Board of Immigration

Appeals ("BIA"). In a written order dated February 13, 2002, which constituted a final order of removal, the BIA affirmed the Immigration Judge's decision to deny Relator's request for withholding of removal, and relief under the Convention Against Torture because it found that Immigration Judge adequately and correctly addressed the issues presented. BIA Decision at 2 (February 13, 2002). Specifically, the BIA found that the Immigration Judge correctly concluded that the background evidence contained in the record regarding the treatment of Baptists in Kazakhstan revealed that it was safe for Relator to return to his country based upon fundamental changes that had occurred there since Relator's departure in 1993. Id. As a result, the BIA dismissed the appeal finding no error in the Immigration Judge's decision to deny Relator's request or withholding of removal and relief under the Convention Against Torture. Id.

II.   Discussion

    A.   Subject Matter Jurisdiction

Although jurisdiction is not contested, this Court notes it has subject matter jurisdiction to entertain Relator's petition for writ of habeas corpus. The Supreme Court held in INS v. St. Cyr, 533 U.S. 289, 297, 121 S. Ct. 2271, 150 L. Ed. 2d 347 (2001), that neither the Illegal Immigration Reform and Immigrant Responsibility Act ("Reform and Responsibility Act") nor the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") repealed federal habeas jurisdiction under 28 U.S.C. § 2241. Following St. Cyr, the Third Circuit in Chmakov v. Blackman, 266 F.3d 210, 215 (3d Cir. 2001), concluded that Congress has preserved the right to habeas review for criminal and non-criminal aliens alike.

    1.   Scope of Review

In determining the scope of review, this Court must consider the impact of the Reform

and Responsibility Act and AEDPA. Although there does not appear to be any restriction on judicial review of INS decisions in the AEDPA, the Reform and Responsibility Act does have certain restrictions.

The question of whether federal courts have jurisdiction to review discretionary challenges to deportation orders has been left open by the Supreme Court by its opinions in Calcano-Martinez v. INS, 533 U.S. 348, 121 S. Ct. 2268, 150 L. Ed. 2d 392 (2001) and INS v. St. Cyr, 533 U.S. 289, 121 S. Ct. 2271, 150 L. Ed. 2d 347 (2001). In Catney v. INS, 274 F.3d 648, 651 (3d Cir. 2001), a case involving a convicted felon's appeal from the BIA's dismissal of his claim for relief from deportation, the Third Circuit held that "we no longer have jurisdiction to review a denial of discretionary relief to a criminal alien."

In Sulaiman, which also involved a petitioner convicted of an aggravated felony seeking relief under the Convention Against Torture, Judge DuBois of this Court wrote, in denying the petition for writ of habeas corpus, and relying on Sol v. INS, 274 F.3d 648, 651 (2d Cir. 2001), and Bowrin v. U.S. INS, 194 F.3d 483, 490 (4th Cir. 1999), that "[o]nly questions of pure law will be considered on § 2241 habeas review. Review of factual or discretionary issues is prohibited." In Kovalev v. Ashcroft, CIV.A.02-4562, 2002 U.S. Dist. LEXIS 18532 (E.D. Pa. Sept. 27, 2002), a case not involving a petitioner convicted of a crime and not involving the Convention Against Torture, this Court applied the same standard of review.

The Government took the position that this Court's review is limited to the Order of the Board of Immigration Appeals ("BIA"), and that the Court does not have authority to review the decision of the Immigration Judge.

After the BIA reviewed the procedural history of the case it noted , "the Immigration

Judge concluded that the respondent had been a victim of past persecution in his country . . ." and that, in such a situation, "it is presumed that his or her life or freedom would be threatened in the future on the basis of the original claim." After further discussion of the INS's opportunity to rebut this presumption, the BIA concluded as follows:

> In a decision dated November 7, 2001, the Immigration Judge concluded that the background evidence contained in the record regarding the treatment of Baptists in Kazakhstan revealed that it was safe for the respondent to return to his country based upon fundamental changes that had occurred there since the respondent's departure in 1993. Accordingly, the Immigration Judge denied the respondent's application for withholding and deferral of removal, and this appeal followed.
>
> We have reviewed the record of proceedings, the Immigration Judge's decision, and the arguments raised on appeal. We find the Immigration Judge adequately and correctly addressed the issues presented, and his decision is affirmed based upon and for the reasons set forth in that decision. Consequently, we find no error in the Immigration Judge's decision to deny the respondent's request for withholding of removal, and relief under the convention.

BIA Decision at 2.

The Third Circuit has held that when the BIA adopts the Immigration Judge's opinion and reasoning, courts can review the Immigration Judge's decision in addition to the BIA's decision. Najjar v. Ashcroft, 257 F.3d 1262, 1284 (3d Cir. 2001). The Court concludes that because the BIA simply endorsed and affirmed the Immigration Judge's findings, that it is a semantic and circular issue whether this Court is reviewing the BIA decision or the Immigration Judge's decision. The BIA did not make any independent findings, or any different findings, but only confirmed and affirmed what the Immigration Judge had done. Because all discussions of the evidence are in the decision of the Immigration Judge, this Court will refer to that decision for the detailed fact finding and reasons, although it is the actual Order of the BIA on which the

Court must rule.

    B.    <u>Relator's Contentions</u>

In his Petition for Writ of Habeas Corpus, Relator contends that the Immigration Judge erred in finding that Relator is removable as an aggravated felon and that the Court should defer to the Immigration Judge's favorable credibility determination.  Although the original Petition for Writ of Habeas Corpus described an additional contention of Relator as questioning whether he was "prima facie eligible for withholding of removal and relief from removal", in the subsequent brief and argument, the contention has been modified to focus on the lack of evidence to overcome the Immigration Judge's finding of a presumption that Relator's life or freedom would be threatened in the future in Kazakhstan.

    C.    <u>Legal Analysis</u>

        1.    <u>Aggravated Felony</u>

Although Relator claims that the Immigration Judge erred in finding that Relator is removable as an aggravated felon because Relator has not been convicted of an aggravated felony, Relator presents no support for his argument.  (Relator's Initial Pet. at 7.)

The Immigration and Nationality Act includes in the definition of aggravated felony "a theft offense (including receipt of stolen property) or burglary defense for which the term of imprisonment [is] at least one year."  8 U.S.C. § 1101(43)(G).  Section 1101(43)(U) includes a "conspiracy to commit an offense described in [8 U.S.C. § 1101(43)]" as an aggravated felony.  Because Relator was convicted of conspiracy to commit the crime of theft by unlawful taking in the Court of Common Pleas for Erie County, Pennsylvania, and was sentenced to an indeterminate term of twelve to forty-eight months, the Court finds that the record supports the

BIA's conclusion that Relator is an aggravated felon.[2]

### 2. Convention Against Torture

A deportable alien may apply for relief under the Convention Against Torture. Although Congress has not specifically enacted legislation implementing the Convention Against Torture, it has compelled the "appropriate agencies" to do so through regulations. Id. at 416 (citing United States Policy with Respect to the Involuntary Return of Persons in Danger of Subjection to Torture, Pub. L. No. 105-277, 112 Stat. 2681-822). The Attorney General issued such regulations in February 1999, which state, in relevant part:

> If the immigration judge determines that the alien is more likely than not to be tortured in the country of removal, the alien is entitled to protection under the Convention Against Torture. Protection . . . will be granted either in the form of withholding of removal or in the form of deferral of removal. An alien entitled to such protection shall be granted withholding of removal unless the alien is subject to mandatory denial of withholding of removal . . . . If an alien entitled to such protection is subject to mandatory denial of withholding of removal . . . the alien's removal shall be deferred . . . .

8 C.F.R. § 208.16(c)(4).

When invoking the protections of the Convention Against Torture, the burden of proof is on the applicant to establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal. 8 C.F.R. § 208.16(c)(2). If the applicant is determined to have suffered past persecution in the proposed country of removal on account of race, religion, nationality, membership in a particular social group, or political opinion, however,

---

[2] Aliens are not eligible for asylum in this country if the Attorney General determines that they have been convicted of an aggravated felony or other "particularly serious crime." 8 U.S.C. § 1158(b)(2)(B). Because Relator has been convicted of an aggravated felony, he is not eligible for asylum in the United States. Nevertheless, Relator is still eligible for protection under the Convention Against Torture. See Sulaiman, 212 F. Supp. 2d at 415-16.

there is a presumption that the applicant's life or freedom would be threatened in the future in the country of removal on the basis of the original claim. 8 C.F.R. § 208.16(b)(1). In such a case, the burden in on the INS to prove by a preponderance of the evidence that: (a) there has been a fundamental change in circumstances such that the applicant's life or freedom would not be threatened, or (b) the applicant could avoid a future threat by relocating to another part of the proposed country. Id.

In Sulaiman, a recent habeas case, Judge DuBois of this Court denied a petition for writ of habeas corpus by a convicted aggravated felon seeking relief from deportation under the Convention Against Torture. Sulaiman, 212 F. Supp. 2d at 419. In reviewing the petitioner's claim that the BIA illegally failed to consider evidence of the possibility of future torture in violation of 8 C.F.R. § 208.16(c)(3)[3], Judge DuBois relied on the Third Circuit's decision in Sevoian v. Ashcroft, 290 F.3d 166 (3d Cir. 2001). Judge DuBois noted that, although the BIA did address the petitioner's evidence concerning Nigeria's political instability and policy of detaining criminal deportees in its final decision, the BIA chose to rely upon State Department reports to the contrary. Judge DuBois, therefore, held that the BIA's consideration of evidence

---

[3] 8 C.F.R. § 208.16(c)(3) provides:
In assessing whether it is more likely than not than an applicant would be tortured in the proposed country of removal, all evidence relevant to the possibility of future torture shall be considered, including, but not limited to:
(i)     Evidence of past torture inflicted upon the applicant;
(ii)    Evidence that the applicant could relocate to a part of the country of removal where he or she is not likely to be tortured;
(iii)   Evidence of gross, flagrant or mass violations of human rights within the country of removal, where applicable; and
(iv)    Other relevant information regarding conditions in the country of removal.

8 C.F.R. § 208.16(c)(3).

on whether the petitioner would be tortured upon return to Nigeria did not violate 8 C.F.R. § 208.16(c)(3).  In <u>Sulaiman</u>, there was no presumption under 8 C.F.R. § 208.16(b)(1) as the Immigration Judge found in this case.

In <u>Sevoian v. Ashcroft</u>, 290 F.3d 166 (3d Cir. 2001)[4], the Third Circuit upheld a BIA decision rejecting a claim for protection under the Convention Against Torture.  In that case, the BIA refused to reopen Sevoian's removal proceeding, after he sought to add a claim for Convention Against Torture protection, on the ground that Sevoian had failed to make a prima facie case for relief under the Convention Against Torture and its implementing regulations. <u>Sevoian</u>, 290 F.3d at 168.  Sevoian challenged the ruling on the ground that the BIA abused its discretion in failing to give sufficient weight to his evidence in violation of 8 C.F.R. § 208.16(c)(3).  <u>Sevoian</u>, 290 F.3d at 175-76.  The Third Circuit rejected Sevoian's claim, holding that the BIA could give more weight to State Department Reports than human-rights group documents.  <u>Id.</u>  More generally, the Third Circuit ruled that the BIA was not required to "address explicitly each type of evidence" to comply with 8 C.F.R. § 208.16(c)(3), but only to "show it has reviewed the record and grasped the movant's claims."  <u>Id.</u> at 178.

    D.    <u>Application of Legal Analysis to Facts</u>

        1.    <u>The Immigration Judge's Credibility Determination</u>

The Immigration Judge found Relator credible.  This Court's scope of review does not encompass a determination of credibility.  Because of this Court's limited review, the only issue

---

[4] <u>Sevoian</u> holds that when the BIA or an Immigration Judge denies reopening on prima facie case grounds, the ultimate decision should be reviewed for an abuse of discretion, while findings of fact should be reviewed for substantial evidence.  <u>Sevoian</u>, 290 F.3d at 174.  Because there is no issue in this case as to reopening the record, the holding in <u>Sevoian</u> is not directly relevant.

the Court can consider is whether the Immigration Judge's decision to deny Relator's withholding of removal and deferral of removal violated the Constitution or the laws of the United States. As such, the Court will not specifically adopt or reject Relator's request that the Court (a) adopt the Immigration Judge's finding that Relator was a credible witness, and (b) accept the facts that Relator presented at trial as true.

2. <u>Membership in the Baptist Church</u>

Because the Immigration Judge concluded that Relator had been a victim of past persecution in Kazakhstan based on his religious beliefs, there was a presumption that Relator's life or freedom would be threatened in the future on the basis of the religion. <u>See</u> 8 C.F.R. § 208.16(b)(1). As a result, the INS had the burden to prove that: (a) there has been a fundamental change in circumstances such that Relator's life or freedom would not be threatened, or (2) Relator could avoid a future threat by relocating to another part of the proposed country. <u>See id.</u>

Relator argues that the Immigration Judge was mistaken in finding that the INS rebutted the presumption of persecution by the preponderance of the evidence by establishing a fundamental change in the conditions in Kazakhstan. (Relator's Initial Pet. at 7-10; Relator's Reply Br. at 7-11.) Relator alleges that: (1) the Immigration Judge ignored substantial testimonial and documentary evidence that clearly indicated that Baptists continue to suffer from harassment, discrimination and persecution in Kazakhstan; and (2) the record contained no evidence to overcome the presumption of past persecution to Relator's family. <u>Id.</u>

At oral argument on December 20, 2002, counsel for the Government argued that the record of the proceedings before the Immigration Judge was sufficient to justify the Immigration Judge's finding that the presumption for the persecution was rebutted by INS. However, the only

document that the able Government attorney referred to was the State Department's Country Report for Kazakhstan, entitled "Kazakhstan - Country Reports on Human Rights Practices - 2000 - Released by Bureau of Democracy, Human Rights, and Labor - February, 2001" (the "Report"), found on the U.S. Department of State website at http://www.state.gov/g/drl/rls/hrrpt/2000/eur/. The Government's counsel could not point to any specific contents of this Report to justify rebuttal of the presumption. The Court has extensively and carefully reviewed this document and cannot find any contents of this document to justify the Immigration Judge concluding that the presumption has been rebutted by the INS. This is clearly the INS's burden. 8 C.F.R. § 208.16(b)(1)(ii) states that "in cases in which the applicant has established past persecution, the service shall bear the burden of establishing by a preponderance of the evidence the requirements of (b)(1)(i)(A) or (b)(1)(i)(B) of this section."

Although (B) does not apply, (A) does apply. 8 C.F.R. § 208.16.(b)(1)(i)(A) provides: "There has been a fundamental change in circumstances such that the applicant's life or freedom would not be threatened on account of any of the five grounds mentioned in this paragraph upon the applicant's removal to that country."

In the above cited Report, concerning freedom of religion (one of the five grounds), the Report does not at all support the Government's position and, in fact, is more corroborative of Relator's position. The Report states, "The Constitution provides for freedom of religion, and the various denominations worship largely without government interference; however, the Government sometimes harasses Islamic and Christian groups whose members it regards as religious extremists." The Report goes on to note that religious organizations, including churches, must register with the Ministry of Justice in order to receive legal status, and without

this registration, there are many restrictions. Difficulties in registration are cited in the Report. Religious groups are not allowed to educate their children without education ministry approval.

Further on in the same Report, with particular note of persecution of Baptists, the Report states:

> In July in Akshoki, near the Chinese border, members of a Baptist church reported that local KNB officials, police and clergy incited a crowd to threaten a group preaching Christianity and burn Christian literature. One member was severely beaten by a group of eight men who demanded he convert to Islam. Government officials declined to comment on this incident.

The Report further notes Government inaction against allegations of attacks of individuals for practicing their religion.

Relator also makes an effective argument that, in order to show that there was a "fundamental change in circumstances" (as is required by regulations), the INS was obliged to introduce, in the record before the Immigration Judge, exactly what the situation was in 1993, in order to show that the situation in 2001 had become better. There is no comparative data in the record before the Immigration Judge.

Relator also asserts that the Immigration Judge, because he denied relief under 8 C.F.R. § 208.16(b), was then obliged to consider whether Relator met his burden under 8 C.F.R. § 208.16(c) but did not do so. As the Court is granting Relator relief on the record before the Immigration Judge, there is no need to consider 8 C.F.R. § 208.16(c).

It is noted that the Third Circuit has shown some doubt about the State Department's Country Reports,[5] but there is simply nothing else in the record to warrant the conclusion of the

---

[5] Lin v. INS, 238 F.3d 239, 248 (3d Cir. 2001); see also Obianuju Ezeagwuna v. Ashcroft, 301 F.3d 116, 129 (3d Cir. 2002).

Immigration Judge, affirmed by the BIA, that the evidence rebutted the presumption by the Immigration Judge.

The question remains as to whether a lack of sufficiency of evidence in the record before the Immigration Judge should be considered a "pure question of law", which is required for this Court to have jurisdiction to review the action of INS.  In this regard, Judge J.M. Kelly of this Court in <u>Fekada v. Ashcroft</u>, Civil Action No. 2002-182, in an Opinion dated December 16, 2002 stated, "While this Court cannot second guess the BIA's actual determinations on habeas, we can review whether the BIA applied the correct legal standard to those factual determinations." Although the Third Circuit has held that the BIA need not address explicitly each type of evidence, and need only show that it has reviewed the record and grasped the movant's claims, <u>Sevoian</u>, 290 F.3d at 178, this Court still has the obligation to determine whether there was at least some evidence in the record to justify the rebuttal of the presumption.  Assuming arguendo this Court does not have the right to "weigh" the evidence, the record must contain, as a matter of due process, at least some evidence to support the decisions of the Immigration Judge and/or the BIA.  Having reviewed this record, the Government cannot point to any specific evidence, and the Court has been unable to find any such evidence.  The Court, therefore, finds that the decisions of the Immigration Judge and the BIA are violations of due process because there is no evidence to support their decisions.  See <u>Garner v. Louisiana</u>, 368 U.S. 157, 163, 82 S. Ct. 248, 7 L. Ed. 2d 207 (1961) (holding that due process is violated where the record is devoid of evidentiary evidence to support a court's decision).

      3.     <u>Impending Army Service in Kazakhstan</u>

Relator also argues that the Immigration Judge misinterpreted the relevant country

conditions and erred when he held that Relator is not prima facie eligible for withholding of removal and deferral of removal under the Convention Against Torture based on his impending army service because the Immigration Judge mistakenly ignored Relator's evidence and relied on speculative reports that "the government of Kazakhstan has recognized the problem and has taken affirmative steps to either end or minimize the practice of military hazing." (Relator's Initial Pet. at 10-14; Relator's Second Pet. at 11-15.)

Because Relator presented no evidence of past persecution with respect to his impending military service, the Court finds that Relator has the burden of proof to establish that it is more likely than not that he would be tortured if removed to Kazakhstan based on his impending military service. See 8 C.F.R. 208.16(c)(2). The Court finds that there was evidence on the record presented by Relator regarding the possibility that conscripts in Kazakhstan continue to suffer from cruel, inhuman and degrading treatment as a result of hazing in the army and/or as a result of imprisonment if they refuse to serve in the army for any reason. The Immigration Judge, however, chose to rely the above-cited Report, which states that the government of Kazakhstan has taken affirmative steps to either end or minimize the practice of military hazing, and found that Relator's reluctance to return to Kazakhstan because of his fear of being drafted into military service did not rise to the level of persecution and that Relator failed to establish a "clear probability" of persecution on that account. Oral Decision of Immigration Judge Durling at 10.

Because the Court has already determined that Relator's order of removal was unconstitutional, the Court need not determine whether Relator is eligible for withholding of removal and relief from removal based on his impending military service in Kazakhstan.

III.    Relief

At oral argument, a question was raised about what relief this Court should grant upon a finding of that Relator is entitled to habeas corpus. The Government contended that the Court had no right to withhold removal, because that was purely an administrative function that belongs to the INS, and that the Court should remand the case to the INS. Relator does not seek deferral of removal because that would authorize the INS to remove him to another country. Relator requests that the Court order withholding of removal.

The Supreme Court in St. Cyr noted that the writ of habeas corpus is available to challenge the legality of executive detention. 533 U.S. at 305. Courts in this district have granted habeas corpus relief in the immigration context by issuing writs of habeas corpus and ordering petitioners released from the custody of the INS. See, e.g., Kacanic v. Elwood, CIV.A.02-8019, 2002 U.S. Dist. LEXIS 21848 (E.D. Pa. Nov. 8, 2002); Duvall v. Elwood, CIV.A.02-2081, 2002 U.S. Dist. LEXIS 15090 (E.D. Pa. Aug. 9, 2002)[6]; Almonte-Vargas v. Elwood, CIV.A.02-2666, U.S. Dist. LEXIS 12387 (E.D. Pa. June 28, 2002).

The Court concludes that it need not specifically grant any additional relief other than to release Relator from INS custody. This is the traditional remedy for a finding of lack of due process in the proceedings under review by a petition for writ of habeas corpus.

IV.    Conclusion

For the reasons discussed above, this Court finds Relator's order of removal

---

[6] In Duvall, Judge Ludwig also held that the INS is barred by collateral estoppel from relitigating the issue of petitioner's alienage. 2002 U.S. Dist. LEXIS 15090, at *13. This Court need not consider the issue of collateral estoppel, however, because the issue is not present in this case.

unconstitutional as based on findings unsupported by evidence, and his Petition for Writ of Habeas Corpus will be granted.

    An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES EX REL.<br>ZHELYATDINOV, SERGEY<br>A 71 230 704,<br><br>                  Relator,<br>v.<br><br>JOHN ASHCROFT, as Attorney General<br>of the United States,<br><br>                  Respondent. | :<br>:<br>:<br>:<br>:   CIVIL ACTION<br>:<br>:   NO. 02-4318<br>:<br>:<br>:<br>: |

**ORDER**

AND NOW, this 27th day of December, 2002, in consideration of Relator's Petition for Writ of Habeas Corpus (Docket No. 1), Government's Response to Petition for Writ of Habeas Corpus (Docket No. 8), and Relator's Legal Brief in Support of Petition for Writ of Habeas Corpus (Docket No. 10), it is hereby ORDERED that Relator's Petition for Writ of Habeas Corpus is GRANTED, and Relator is released from the custody of the Immigration and Naturalization Service.

                                                **BY THE COURT:**

                                                _____
                                                **MICHAEL M. BAYLSON, U.S.D.J.**

O:\Orders\Zhelyatdinov v. Ashcroft, 02-4318, Memo & Order re Habeas Petition.wpd